```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GEROD MOBLEY,

                            Plaintiff,           MEMORANDUM
                                                 AND OPINION
            -against-                            CV 15-3418 (AYS)

DOCTOR ELYANA MATAYEVA,
OFFICER JASON COLLINS, OFFICER
"SGT" RICHARD SOTO, OFFICER
LEONARD MATTEWSON, OFFICER
WILLIAM BOURGUIGON, AND
OFFICER DAMIAN SUAREZ,

                            Defendants.
-----------------------------------------------------------------X
```

**ANNE Y. SHIELDS, United States Magistrate Judge:**

This is a civil rights action in which the Pro Se Plaintiff, Gerod Mobley ("Mobley" or "Plaintiff") alleges that Defendants used excessive force upon him and denied him adequate medical care when he was arrested on May 1, 2014. Presently before the Court are motions for summary judgment by Defendants Officer Jason Collins ("Collins"), Sergeant Richard Soto ("Soto"), Officer Leonard Mathewson ("Mathewson"), Officer William Bourguigon ("Bourgigon"), and Officer Damian Suarez ("Suarez") (the "County Defendants") and by Doctor Elyana Matayeva ("Matayeva") (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes both motions. For the following reasons, Defendants' motions for summary judgment are granted in their entirety.

BACKGROUND

I.    Basis for Facts Considered in the Context of the Motions

The relevant facts, as set forth below, are taken solely from Defendants' Local Civil Rule 56.1 Statements of undisputed material facts and the evidence filed in support of their motions.

1

The Court relies solely on Defendant's Rule 56.1 Statements because Plaintiff failed to file a counter-statement, as required by Local Civil Rule 56.1(b). In particular, pursuant to Local Civil Rule 56.1, where the party opposing summary judgment fails to file the required Local Civil Rule 56.1 counter-statement, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion [for summary judgment] unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Loc. Civ. R. 56.1(c). The Court finds Defendants' Rule 56.1 Statements to be proper since they contains citations to admissible evidence to support each asserted material fact, see Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003), and, based upon Plaintiff's failure to comply with Local Civil Rule 56.1, deems the facts set forth in Defendants' 56.1 Statements admitted. See Nassar Family Irrevocable Trust v. United States, Nos. 13 Civ. 5680, 13 Civ. 8174, 2016 WL 5793737, at *1 n.2 (S.D.N.Y. Sept. 30, 2016) ("Because Nassar has failed to file a response [to Defendant's Rule 56.1 Statement], all facts set forth in the Government's statement are deemed admitted in deciding the instant motion."); Luizzi v. Pro Transport Inc., No. 02 CV 5388, 2009 WL 252076, at * 2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").

II.     Relevant Facts

On May 1, 2014, members of a Nassau County Police Department anti-crime Task Force unit were in the vicinity of Hempstead Turnpike and Hendrickson Avenue in Elmont, New York,

when an officer observed an apparent drug transaction between two individuals.  (County Def. Local Civ. R. 56.1 Statement ("County Def. 56.1") ¶¶ 1, 3.)  When the officer attempted to make an arrest, the purported purchaser fled on foot and the officers lost sight of him.  (Id. ¶ 4.)  That individual was not apprehended.  (Id.)

Plaintiff herein was identified by police as being the other individual involved in the drug transaction and was observed entering the rear passenger compartment of a sport-utility vehicle.  (Id. ¶¶ 5-6.)  Officers followed the vehicle, keeping it within constant view, and eventually pulled the vehicle over on the Long Island Expressway.  (Id. ¶ 7.)  Upon stopping the vehicle, officers found three occupants inside – Plaintiff, his twin brother, Gerald Mobley ("Gerald"), and Gerald's girlfriend, Jessica Williams ("Williams").  (Id. ¶ 8.)  Officers also recovered a large quantity of drugs inside the vehicle.  (Id. ¶ 9.)  Since none of the occupants claimed ownership of the drugs, all three individuals were arrested on May 1, 2014.  (Id. ¶ 10; Matayeva Local Civ. R. 56.1 Statement ("Matayeva 56.1") ¶ 1.)

During a search incident to Plaintiff's arrest which was conducted in the bathroom at the precinct, officers observed what appeared to be a plastic bag partially sticking out of Plaintiff's anus.  (County Def. 56.1 ¶¶ 13-14.)  While being transported to the precinct, Plaintiff had secreted a plastic bag containing approximately one gram of cocaine in his anal cavity.  (Id. ¶ 17; Matayeva 56.1 ¶ 3.)  At the time he was being searched, Plaintiff knew he had a bag of cocaine secreted in his rectum and that such a condition could be dangerous.  (County Def. 56.1 ¶¶ 18, 35; Matayeva 56.1 ¶ 4.)  Defendant Bourguigon saw the bag of cocaine in Plaintiff's rectum and ordered Plaintiff to give it to him.  (Id. ¶ 19.)  Plaintiff refused to comply with Bourguigon's directive.  (Id.)  Plaintiff was then ordered to remove the bag himself, but refused to do so.  (Id. ¶ 21.)

Plaintiff was then transported to Nassau University Medical Center ("NUMC") so that the bag of cocaine could be safely removed from his rectum. (County Def. 56.1 ¶ 21; Matayeva 56.1 ¶ 5.) Plaintiff was aware that he was being transported to NUMC to have the drugs removed; when officers advised him of such, he responded "do what you have to do." (County Def. 56.1 ¶ 25; Matayeva 56.1 ¶ 6.) Plaintiff also advised the Ambulance Medical Technician and hospital staff that he had inserted cocaine into his rectum. (County Def. 56.1 ¶¶ 24, 27.)

Upon arrival at the hospital, Matayeva examined Plaintiff. (Matayeva 56.1 ¶ 7.) Plaintiff did not refuse to be examined nor did he tell Matayeva not to remove the drugs. (Id.) Moreover, Plaintiff did not complain of any pain or injury when he arrived at the hospital. (County Def. 56.1 ¶¶ 28-29.) Plaintiff attempted to hinder removal of the bag of drugs, however, by removing Matayeva's hand and moving around while she was attempting to examine him. (Id. ¶ 30.) Accordingly, one of the defendant officers was required to hold part of Plaintiff's arm and part of his leg to enable Matayeva to conduct the exam. (Id.)

Following administration of an enema, a quantity of drugs was excreted from Plaintiff's rectum. (Id. ¶ 32.) After excretion of the drugs, Plaintiff's vital signs were checked and he was found fit for confinement and discharged from NUMC. (Id. ¶ 33.) Plaintiff did not complain of any injury; nor did he require any subsequent medical treatment related to his rectal area. (Id. ¶ 34.) Plaintiff ultimately pled guilty to possession of drugs in connection with the underlying incident. (Id. ¶ 12; Mobley Dep. 8, annexed to Ben-Sorek Decl, at Ex. G.).

III.  The Complaint and Motion

Plaintiff commenced this action on June 11, 2015, pursuant to 42 U.S.C. § 1983, alleging that (1) the County Defendants used excessive force upon him in trying to remove the bag of drugs from his rectum at the precinct house, and (2) that Matayeva failed to provide adequate

4

medical care while Plaintiff was at NUMC.  (See generally Compl.)  Defendants now move for summary judgment as to both claims.

## DISCUSSION

I.      Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden is on the moving party to establish the lack of any factual issues.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  Rather, the requirement is that there be no "genuine issue of material fact."  Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).  When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts."  Id. at 586.  In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide the district courts in their determination of summary judgment motions."  SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006)

(quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II.  The County Defendants' Motion

The only claim against the County Defendants is for excessive force in connection with the attempted removal by said Defendants of the bag of cocaine secreted in Plaintiff's rectum. Excessive force claims brought pursuant to Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012) (quoting Brosseau v. Haugen, 543 U.S. 194, 197 (2004)). Under this standard, the determinative question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Spinelli v. City of New York, 579 F.3d 160, 167 (2d Cir. 2009) (citation omitted).

"Under the law, police are not permitted to use any degree of force in all instances – in some circumstances, no use of force is reasonable because none is required." Weather v. City of Mount Vernon, No. 08 Civ. 192, 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011), aff'd, 474 F. App'x 821 (2d Cir. 2012). It is "well established that law enforcement officers violate the Fourth Amendment if the amount of force they use is 'objectively unreasonable' in light of the facts and circumstances confronting them." Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (citation omitted). However, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. (quoting Graham v. Connor, 490 U.S. 386, 396-97

(1989)). "The 'reasonableness' of the amount of force used thus 'must be judged from the perspective of a reasonable officer on the scene . . . at the moment' the force is used." Rogoz, 796 F.3d at 246-47 (quoting Graham, 490 U.S. at 396). "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" Rogoz, 796 F.3d at 247 (quoting Graham, 490 U.S. at 396, 397). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted).

The County Defendants move for summary judgment on the grounds that any force utilized against Plaintiff was reasonable. In determining what is "reasonable" under the Fourth Amendment, courts must consider such factors as (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and, (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). Here, the County Defendants argue, and the Court agrees, that the presence of drugs in Plaintiff's rectum, a fact that Plaintiff does not contest, posed an immediate threat to Plaintiff's health and safety, requiring prompt removal of the contraband. Indeed, Plaintiff's own deposition testimony demonstrates that he was aware that placing the bag of cocaine in his rectum was dangerous. (Mobley Dep. 36.) Accordingly, in light of the exigent circumstances presented to the County Defendants at the time, it was entirely reasonable to use some degree of force in removing the drugs from Plaintiff's body. See Wilkinson v. Lewis, 289 F. Supp. 3d 371, 385 (N.D.N.Y. 2018) ("[P]olice receive a fairly wide zone of protection in close cases involving potential danger, emergency conditions, and other exigent circumstances.").

7

The next question for the Court to consider is whether the amount of force used by the County Defendants was reasonable under the circumstances. Plaintiff asserts that while he was in the bathroom of the precinct house, he was directed to remove his clothes and squat down as part of the search incident to arrest. (Mobley Dep. 27.) Plaintiff was aware at this time that he had a bag of cocaine in his rectum. (Id. 35.) According to Plaintiff, at this point, Defendant Bourguigon tackled him to the floor, repeatedly stating "give it to me." (Id. 28.) Plaintiff asserts that Bourguigon then placed a glove on his hand and inserted a finger into Plaintiff's rectum, while using his knee and forearm to hold Plaintiff down. (Id. 29.) Plaintiff testified that he attempted to resist Bourguigon from examining his anus by trying to get up from the floor and by tightening his buttocks' muscles. (Id. 32-33.) An ambulance was then called to transport Plaintiff to NUMC. (Id. 33.)

The County Defendants argue that because Plaintiff sustained no injuries and had no complaints of pain or injury related to the search conducted at the precinct, the level of force used does not rise to a constitutional violation. (County Def. Mem. of Law 6.) The Court agrees. The facts before the Court asserted by the County Defendants, which, again, are uncontested, show that Plaintiff suffered no ill effects from the search conducted by the County Defendants at the precinct. "Where an arrestee suffers de minimis injuries, summary judgment is appropriate." Smith v. City of New York, No. 04-CV-3286, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010), aff'd sub nom. Smith v. Tobon, 529 Fed. App'x 36 (2d Cir. 2010). "Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity." Smith, 2010 WL 3397683, at *10 (collecting cases). Here, Plaintiff did not complain to anyone – either the defendant officers or hospital staff at NUMC – about pain or injury following the search conducted at the precinct. Nor has Plaintiff submitted any

8

medical evidence to support a claim that he suffered any pain or injury as a result of the search. Accordingly, the Court finds that the force used by the County Defendants was objectively reasonable under the circumstances, particularly in light of the exigent circumstances – i.e., the danger posed to Plaintiff's health – present at the time. For these reasons, the Court grants summary judgment to the County Defendants with respect to Plaintiff's claim for excessive force.

Moreover, even if the Court were to find that the force used upon Plaintiff was excessive, the County Defendants would still be entitled to summary judgment on the grounds of qualified immunity. "Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bartels v. Guariglia, No. 16-CV-1848, 2019 WL 2076809, at *8 (E.D.N.Y. May 10, 2019) (quoting Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003)) (internal quotation marks and citation omitted). A constitutional right is "clearly established" where "existing law . . . place[s] the constitutionality of the [official's] conduct 'beyond debate.'" District of Columbia v. Wesby, __ U.S. __, 138 S. Ct. 577, 589 (2018) (quoting Ashcroft v. al-Kidd, 536 U.S. 731, 741 (2011)). "To that end, the Supreme Court has described qualified immunity as a 'demanding' doctrine protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Bartels, 2019 WL 2076809, at *8 (quoting Wesby, 138 S. Ct. at 589) (additional citation omitted).

In determining whether a defendant is entitled to qualified immunity, courts conduct a two-step analysis: (1) do the facts demonstrate that the defendant's conduct violated plaintiff's constitutional rights; and, (2) if there was a constitutional violation, was the right clearly established at the time of the defendant's actions. See Bartels, 2019 WL 2076809, at *9 (citing

Barboza v. D'Agata, 676 F. App'x 9, 12 (2d Cir. 2017)).  A court may, however, "in its own discretion, refrain from determining whether a constitutional right has been violated and move directly to the question of qualified immunity (i.e., whether a constitutional right was clearly established at the time the defendant acted)."  Costello v. City of Burlington, 632 F.3d 41, 51-52 (2d Cir. 2011) (Pooler, J., concurring) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).

The County Defendants are entitled to qualified immunity from Plaintiff's claim of excessive force because, based on the facts known to them at that time, it was objectively reasonable for them to believe that their actions in attempting to remove the bag of drugs secreted in Plaintiff's rectum were necessary and appropriate to protect Plaintiff's health and well-being.  As stated above, Plaintiff acknowledged that it was dangerous to place the bag of drugs in his rectum.  Had the bag perforated, the drugs contained therein would have made their way into Plaintiff's system, putting his health at grave risk.  Accordingly, this Court finds that it was objectively reasonable for the County Defendants to attempt to remove the drugs from Plaintiff's rectum and, when they could not properly do so, to transfer Plaintiff to NUMC for removal.

Based on the foregoing, the County Defendants' motion for summary judgment is also granted on the grounds of qualified immunity and the County Defendants are granted judgment as a matter of law with respect to Plaintiff's excessive force claim.

III.     Dr. Matayeva's Motion

The only claim asserted against Matayeva is for failure to provide adequate medical care to Plaintiff.  Matayeva moves for summary judgment on the ground that Plaintiff has failed to present any evidence that she acted with a significantly culpable state of mind, demonstrating deliberate indifference.

As a preliminary matter, Plaintiff asserts that Matayeva violated both his Eighth and Fourteenth Amendment rights by failing to provide adequate medical care. However, the Eighth Amendment applies to convicted prisoners only. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825 (1994)). Where, as here the plaintiff is "a pretrial detainee, not a person who ha[s] been convicted, . . . the Eighth Amendment [does] not apply." Weyant, 101 F.3d at 856 (citations omitted). Rather, the claim is properly analyzed under the Due Process Clause of the Fourteenth Amendment. See id.; see also Thomas v. Nassau County Correctional Center, 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003) ("While the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment in the form of inadequate medical care, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care by the state."). Regardless of the academic distinction, "the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." Thomas, 288 F. Supp. 2d at 337 (citation omitted).

To succeed on a claim of inadequate medical care, Plaintiff must establish that Matayeva acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). The deliberate indifference standard includes both objective and subjective components. See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). The objective component requires that "the alleged deprivation . . . be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v. Coughlin, 99 F.3d 550, 554 (2d Cir. 1996) (internal quotation marks and citation omitted). The subjective component requires that "the charged official . . . act with a sufficiently culpable state of mind," i.e., with "deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). "Deliberate indifference is a mental state equivalent to [criminal]

recklessness," which means that "the charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id.

Thus, to prevail, Plaintiff must prove that Matayeva knew of his "serious [medical] need and deliberately disregarded it." Villar v. Ramos, No. 13 Cv. 8422, 2015 WL 3473413, at *3 (S.D.N.Y. June 2, 2015) (citing Farmer, 511 U.S. at 837) (additional citations omitted). "[M]ere allegations of negligent malpractice do not state a claim of deliberate indifference . . . ." Hathaway, 99 F.3d at 553; see also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment . . . ."). Likewise, "mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to [a constitutional] violation." Id. (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

Applying the foregoing principles, the Court finds that Plaintiff has failed to prove that Matayeva acted with deliberate indifference to his medical needs. Plaintiff was brought to NUMC with a bag of cocaine secreted in his rectum, which he deliberately placed there in an effort to avoid a more serious criminal charge being lodged against him. (Mobley Dep. 35.) Matayeva, as a doctor, had a duty to remove the bag of drugs before it endangered Plaintiff's health and well-being. Plaintiff's claim that Matayeva's removal of the drugs constituted inadequate medical care defies logic. To the contrary, had Matayeva not removed the bag of cocaine from Plaintiff's body and the bag had thereafter ruptured, Plaintiff's health would have been seriously endangered. Under those circumstances, which are the opposite of the facts presented here, Plaintiff might have had a claim for deliberate indifference to his medical needs.

Here, given the danger posed to Plaintiff's health by the presence of drugs in his rectum, Matayeva fulfilled her duty as a doctor and removed the bag, providing proper medical care to Plaintiff.

Based on the foregoing, the Court finds that there is no genuine issue of material fact with respect to Plaintiff's claim that Matayeva failed to provide adequate medical care. Accordingly, Matayeva's motion for summary judgment is granted in its entirety and judgment as a matter of law is granted to Matayeva with respect to Plaintiff's claim for failure to provide adequate medical care.

## CONCLUSION

For the foregoing reasons, both the County Defendants' and Matayeva's motions for summary judgment are granted. All Defendants are granted judgment as a matter of law with respect to all claims asserted against them. The Clerk of the Court is directed to enter judgment accordingly and to mark this case closed. Counsel for the County Defendants is directed to serve a copy of this Order on the Pro Se Plaintiff, and to file proof of service on the docket sheet, by September 22, 2020.

**SO ORDERED:**

Dated: Central Islip, New York
       September 17, 2020            /s/     Anne. Y. Shields
                                     ANNE Y. SHIELDS
                                     United States Magistrate Judge